02-10-055-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00055-CR

 

 


 
 
 Rodney E. Owens
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 371st
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

A
jury convicted Appellant Rodney E. Owens of aggravated assault with a deadly
weapon, to wit: a firearm and, after finding that he is repeat offender,
assessed his punishment at ninety-nine years’ imprisonment and a $10,000 fine. In
three issues, Owens complains that the trial court erred by admitting evidence
of his attempt to evade arrest and that his sentence was unlawfully enhanced
with a prior military conviction.  We will affirm.

II.  Factual and Procedural Background

          Nekisia
“Kisia” Baldwin dated Owens for eleven and a half years and had a child with
him.  After they broke up, Kisia began dating Reggie Lucien, who worked at
Wal-Mart with her.  Reggie knew Owens because Owens used to go to the Wal-Mart
where Reggie and Kisia worked to see Kisia.  Owens once told Kisia that he was
going to hurt Reggie if he ever saw him and that Reggie “better have [his] gun
because [Owens] was going to have his.”  Owens followed Reggie home from work
one day, and at a stop light, Owens rammed his vehicle into the back of Reggie’s
vehicle.  Reggie’s vehicle went through the intersection and into the parking
lot on the other side.  Owens got out and yelled, “I know where you work.  I’m
going to kill you.”

About
a week later, Reggie was outside in his apartment complex with his cousin,
Timaeus Duncan, watching a friend work on Timaeus’s car.  Owens drove up in a
silver Ford Focus.  He got out of the car and told Reggie to stay away from
Kisia.  Owens was holding a gun at his side and looked “like he wanted to
attack.”  When Reggie saw the gun, he pulled his own gun out of his pocket and
pointed it at Owens.  Reggie was carrying the gun because of Owens’s previous
threats.  Owens got back in the Ford Focus, backed up about thirty feet, then
stopped, got back out, and again told Reggie to stay away from Kisia.  Reggie
drew his gun again, and Owens got back in the car and drove out of the
apartment complex.  As he was driving past the complex, Reggie noticed Owens
rolling down his driver’s side window so Reggie yelled to Timaeus to get down. 
Owens fired two shots and took off.

Reggie
called the police.  While the police were at Reggie’s apartment, Owens left a
voice message on Kisia’s phone telling her that she would be forgiven if she
came back to him.  Reggie was carrying her phone at the time, and he played the
message for the officers.

First
grade teacher Angela Moberley was driving to school that morning and saw a
silver Ford Focus slowing down; she then heard “two boom booms” coming from the
car and saw the car speed away.  She never saw the driver of the car.

Later
that month, Fort Worth Police Officer William Snow was on patrol when he
noticed a silver Ford Focus parked in front of a convenience store. Officer
Snow ran a license plate check and discovered that the vehicle had been stolen
in Dallas County.  He followed the car, and when he tried to pull it over,
Owens, who was driving the car, sped up.  A twenty-five-minute chase ensued,
during which Owens ran several red lights and stop signs and drove up to 120
miles per hour.  Owens eventually wrecked the car.  He briefly ran from police
officers before surrendering.

Prior
to trial, the State filed written notice of its intent to enhance Owens’s
punishment with four aggravated assault convictions—one from a general
court-martial, two from the United States Army Court of Criminal Appeals, and another
from the Army Court of Military Review.  At the punishment stage of trial, the
State introduced evidence to support only the first enhancement allegation,
alleging that Owens had been convicted of “the felony offense of aggravated
assault, in the general court-martial, Fort Ord, California, in General
Court-Martial Order Number 1, on the 7th day of January, 1991.”  The jury found
that Owens was a repeat offender.

III.  Military Conviction Used For Enhancement

In
his third issue, Owens argues that his sentence is unlawful because it was
enhanced with a military conviction for “[a]ssault intentionally inflicting
grievous bodily harm.”[2]  According
to Owens, “because the military code does not label its crimes as misdemeanors
and felonies, . . . a military conviction can never be used to enhance a felony
in Texas unless the military crime is punishable by death.”  The State argues
that Owens has not preserved his complaint for appeal and that, alternatively,
Owens’s prior military conviction was a felony, properly used for enhancement
purposes.

Owens
did not object when the State presented its Notice of Intent to Seek Finding on
Repetition Allegation or when the State offered into evidence State’s Exhibit
27 as proof of Owens’s prior conviction.  In fact, Owens’s defense counsel
stated that he had no objection to the exhibit.  However, Owens’s complaint is
that his sentence is unlawful because the use of a military conviction for enhancement
purposes was improper.  A defendant has an absolute and nonwaivable right to be
sentenced within the proper range of punishment established by the legislature.
 See Mizell v. State, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003).[3]  Consequently,
we will address Owens’s complaint.

The
Texas Penal Code designates offenses as felonies or misdemeanors.  Tex. Penal
Code Ann. § 12.02 (Vernon 2003).  Under the penal code, a felony is “an offense
so designated by law or punishable by death or confinement in a penitentiary,”
whereas a misdemeanor is “an offense so designated by law or punishable by
fine, by confinement in jail, or by both fine and confinement in jail.” 
Id. § 1.07(23), (31) (Vernon Supp. 2010) (emphasis added).  For
enhancement purposes, any conviction not obtained from a prosecution under the
Texas Penal Code provisions is classified as a “felony of the third degree” if
punishment includes “imprisonment in the Texas Department of Criminal Justice
or another penitentiary.”  Id. § 12.41(1) (Vernon Supp. 2010).  The
Texas Court of Criminal Appeals has held that properly proved-up court-martial
proceedings are deemed final convictions and are admissible in courts of record
to prove prior convictions.  See Johnson v. State, 432 S.W.2d 98, 100
(Tex. Crim. App. 1968) (“The use of such records in proving a prior conviction
of an accused has been many times approved by this Court.”).

Here,
Owens was convicted of an offense defined by a penal statute outside the penal
code, and the offense is classified as a “felony of the third degree” if
punishment includes “imprisonment in the Texas Department of Criminal Justice
or another penitentiary.”  See Tex. Penal Code Ann. § 12.41(1); Johnson,
432 S.W.2d at 100.  State’s Exhibit 27 shows that the maximum punishment
for the offense was five years’ confinement, dishonorable discharge, total
forfeiture, and reduction of rank.  Owens received eleven months’ confinement,
bad conduct discharge, total forfeiture, and reduction of rank.  Although the
evidence shows only that the offense was punishable “by confinement” for up to
five years (and does not indicate whether that confinement could be in a
penitentiary), “[p]ersons convicted of offenses against the United States or by
courts-martial punishable by imprisonment for more than one year may be
confined in any United States penitentiary.”  18 U.S.C.A. § 4083 (West 2000). 
Accordingly, the offense met the definition of a felony under penal code section
12.41.  See Tex. Penal Code Ann. § 12.41; see also Mosley v. State,
Nos. 05-09-01315-CR, 05-09-01316-CR, 05-09-01317-CR, 2010 WL 5375968, at *6
(Tex. App.—Dallas Dec. 29, 2010, no pet.) (not designated for publication) (holding
that prior military conviction carrying imprisonment in the penitentiary as a
possible confinement was a felony under section 12.41 and subject to use for
enhancement purposes under section 12.42).  Because Owens’s prior military
conviction was classified as a felony under the penal code, it was properly
used to establish that he is a repeat offender.  See Tex. Penal Code
Ann. § 12.42(b).  Owens was sentenced within the statutory range; consequently,
we hold that his sentence was not unlawful.  See id.  §§ 12.32,
12.42(b).  We overrule his third issue.

IV.  Evidence of Evading Arrest

In
his first two issues, Owens argues that the trial court abused its discretion
by admitting extraneous offense evidence of his evading arrest.  In his first
issue, he argues that the evidence was character evidence used to show his
propensity for criminal activity, the admission of which was prohibited under
rule of evidence 404(b).  See Tex. R. Evid. 404(b).  In his second
issue, he argues that any probative value of the evidence was outweighed by the
danger of unfair prejudice and confusion of the issues under rule of evidence
403.  See Tex. R. Evid. 403.  The State responds that the evidence was
admissible to show Owens’s consciousness of guilt and identity and that the
probative value of the evidence was not substantially outweighed by the danger
of unfair prejudice.

A.
Standard of Review

We
review a trial court’s decision to admit or to exclude evidence under an abuse
of discretion standard.  Weatherred v. State, 15 S.W.3d 540, 542 (Tex.
Crim. App. 2000); Lagrone v. State, 942 S.W.2d 602, 613 (Tex. Crim. App.),
cert. denied, 522 U.S. 917 (1997).  A trial court does not abuse its
discretion as long as the decision to admit or to exclude the evidence is
within the zone of reasonable disagreement.  Montgomery v. State, 810
S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on reh’g).

B.  Relevancy
of the Evidence

It
is improper to try a defendant for being a criminal generally.  Alba v.
State, 905 S.W.2d 581, 585 (Tex. Crim. App. 1995) (citing Nobles v.
State, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992)), cert. denied, 516
U.S. 1077 (1996).  Texas Rule of Evidence 404(b) states, “Evidence of other
crimes, wrongs or acts is not admissible to prove the character of a person in
order to show action in conformity therewith.”  Tex. R. Evid. 404(b).  However,
rule 404(b) also provides that extraneous offense evidence may “be admissible
for other purposes, such as proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident.”  Id. 
This list is illustrative, rather than exhaustive.  Johnston v. State,
145 S.W.3d 215, 219 (Tex. Crim. App. 2004).

An
extraneous offense may be admissible to show identity when identity is at issue
in the case.  Page v. State, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006);
Lane v. State, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996).  Moreover,
evidence of flight is admissible as a circumstance from which an inference of
guilt may be drawn.  Alba, 905 S.W.2d at 585 (citing Foster v. State,
779 S.W.2d 845, 859 (Tex. Crim. App. 1989), cert. denied, 494 U.S. 1039 (1990)).
 So long as the extraneous offense is shown to be a necessarily related
circumstance of the defendant’s flight, it may be admitted to the jury.  Id.;
Bigby v. State, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994) (holding that
to exclude evidence of flight, defendant must show that his flight was “directly
connected to some other transaction and further that it was not connected with
the offense at trial”), cert. denied, 515 U.S. 1162 (1995).

Here,
the complained-of evidence was relevant as a circumstance from which an
inference of guilt may be drawn.  See Alba, 905 S.W.2d at 585; Torres
v. State, 794 S.W.2d 596, 599 (Tex. App.—Austin 1990, no pet.) (“The ‘a
consciousness of guilt’” exception to the general rule is alive and well in
Texas.”).  And Owens offered no evidence to show that his attempt to evade
arrest was connected to some transaction other than his assault on Reggie, such
as the theft of the Ford Focus that Owens was driving.  See Bigby,
892 S.W.2d at 883; Burks v. State, 227 S.W.3d 138, 149 (Tex.
App.—Houston [1st Dist.] 2006, pet. ref’d) (“Finally, appellant offered no
evidence and therefore failed to meet his burden to show that his flight was
connected to some other transaction or offense.”).

Additionally,
the evidence that Owens fled from police while driving a silver Ford Focus was
relevant to show identity.  See Tex. R. Evid. 404(b); Page, 213 S.W.3d at
336; Lane, 933 S.W.2d at 519.  Although Reggie identified Owens in a
photo spread and in the courtroom as the person who fired two shots towards
him, no other witnesses positively identified Owens as the shooter.  As the
State points out, Reggie’s credibility was subject to attack because he and
Owens were both involved with the same woman; during closing argument, defense
counsel argued, “We’ve heard from eight witnesses in this trial . . . .  And
only one of all these witnesses could actually testify as a fact witness that
[Owens] is guilty of this aggravated assault, and he’s the one with the dog in
the fight.  They were seeing the same woman.”  Angela, the only other
eyewitness to testify, explained that the shooter was driving a silver Ford
Focus, but she could not identify the shooter.  Thus, testimony that Owens led
officers on a high-speed chase in a silver Ford Focus a few weeks after the
shooting was relevant to show identity.

We
hold that the trial court did not abuse its discretion by determining that the
complained-of evidence was relevant for purposes other than character
conformity, specifically, to show his consciousness of guilt and his identity. 
See Tex. R. Evid. 404(b); Montgomery, 810 S.W.2d at 380.  We
overrule Owens’s first issue.

C.  Probative
Value of Evidence Not Outweighed by Prejudicial Effect

Having
found that the evidence was relevant, we will now address Owens’s rule 403
complaint.  See Tex. R. Evid. 403.  That rule provides that even
relevant evidence may be excluded “if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury . . . .”  Id.  “‘Relevant
evidence’ means evidence having any tendency to make the existence of any fact
that is of consequence to the determination of the action more probable or less
probable than it would be without the evidence.”  Tex. R. Evid. 401.  “Whether
extraneous offense evidence has relevance apart from character conformity . . .
is a question for the trial court.”  Moses v. State, 105 S.W.3d 622, 627
(Tex. Crim. App. 2003).

Rule
403 favors the admission of relevant evidence, and it is presumed that relevant
evidence will be more probative than prejudicial.  Shuffield v. State,
189 S.W.3d 782, 787 (Tex. Crim. App.), cert. denied, 549 U.S. 1056
(2006).  A proper rule 403 analysis includes, but is not limited to, the
following factors: (1) the probative value of the evidence; (2) the potential
of the evidence to impress the jury in some irrational, yet indelible, way; (3)
the time needed to develop the evidence; and (4) the proponent’s need for the
evidence. Prible v. State, 175 S.W.3d 724, 733 (Tex. Crim. App.), cert.
denied, 546 U.S. 962 (2005).

We
have already explained how the evidence at issue here was probative of
identity—showing that Owens was driving a silver Ford Focus weeks after the
shooting—and was probative of his consciousness of guilt—showing that he
attempted to flee from officers when one of them tried to pull him over.  A
consciousness of guilt is perhaps one of the strongest kinds of evidence of
guilt.  Torres, 794 S.W.2d at 598.

Prior
to the introduction of this evidence, the trial court instructed the jury,

Jury, you are
instructed that if there is any testimony or exhibits before you in this case
regarding [Owens’s] having committed offenses other than the offense alleged
against him in the indictment in this case, you cannot consider said testimony
for any purpose unless you find and believe beyond a reasonable doubt that
[Owens] committed such other offenses, if any were committed, and even then you
may only consider the same in determining in this case flight, consciousness of
guilt, and identity of [Owens], if any, in connection with the offense, if any,
alleged against him in the indictment in this case and for no other purpose.

 

The
trial court’s charge to the jury also included an extraneous offense
instruction that it could consider extraneous offenses only in determining “motive,
opportunity, intent, preparation, plan, knowledge, identity, flight,
consciousness of guilt, alleged injured party’s reason to possess a firearm, or
absence of mistake or accident [by Owens].”  In its closing argument, the State
explained that the jury could consider evidence of Owens’s evading arrest as
consciousness of guilt.  Although the court’s instructions, and the State’s
argument, did not necessarily preclude any potential danger of unfair prejudice
or confusion of the issues, they assisted the jury in understanding the purpose
for which the evidence was admitted and for which it could be properly
considered.

The
State called eight witnesses at trial, and two of these witnesses testified
about Owens’s evading arrest.  Their testimony comprised approximately forty
pages of a 175-page record.  The State’s primary witness was Reggie, who was
the only person who identified Owens at trial and whose credibility was at
issue.  The State’s only other eye-witness, Angela, could only testify that the
gunshots came from a silver Ford Focus.  Thus, the State needed the evidence to
support Reggie’s and Angela’s testimony.

We
hold that the trial court did not abuse its discretion by determining that the
prejudicial effect of the evidence of Owens’s flight from police did not
outweigh its probative value.  See Tex. R. Evid. 403; Montgomery,
810 S.W.2d at 380.  Consequently, we overrule Owens’s second issue.

V.  Conclusion

Having
overruled Owens’s three issues, we affirm the trial court’s judgment.  

 

 

SUE WALKER
JUSTICE

 

PANEL: 
WALKER, MEIER, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  April 14, 2011









[1]See Tex. R. App. P. 47.4.





[2]Aggravated assault is a
second degree felony, ordinarily punishable by imprisonment for not more than
twenty and not less than two years, as well as a fine not to exceed $10,000.
Tex. Penal Code Ann. §§ 12.33, 22.02(b) (Vernon Supp. 2010).  Upon proof of a
prior felony conviction, a defendant convicted of a second degree felony may be
punished for a first degree felony, punishable by imprisonment for life or for
not more than ninety-nine and not less than five years, as well as a fine not
to exceed $10,000.  Id. §§ 12.32, 12.42(b) (Vernon Supp. 2010).





[3]And to the extent that
Owens’s complaint could be interpreted as a challenge to the sufficiency of the
evidence to support the enhancement finding, his complaint need not be raised
in the trial court to be preserved for appellate review.  See Moff v. State,
131 S.W.3d 485, 488–89 (Tex. Crim. App. 2004); Rankin v. State, 46
S.W.3d 899, 901 (Tex. Crim. App. 2001).